**LAW OFFICES OF**
**BLAKE GOODMAN, PC**

Blake Goodman
Bar Number: 7436
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 828-4274
*Attorney for Plaintiff*
*Eileen Ululani Piligrino*

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII (Honolulu)

| | |
|---|---|
| EILEEN ULULANI PILIGRINO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION, LLC; and PEARL HAWAII FEDERAL CREDIT UNION,<br><br>　　　　Defendants. | Case No. :1:23-cv-58<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><br>**Fair Credit Reporting Act,**<br>**15 U.S.C. § 1681, *et seq*.** |

Plaintiff Eileen Ululani Piligrino ("Plaintiff") brings this cause based on violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., against Defendants Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("Trans Union"), and Pearl Hawaii Federal Credit Union ("Pearl Hawaii FCU") (collectively, "Defendants").

//

## INTRODUCTION

1.      Plaintiff's Complaint alleges that consumer reporting agencies ("CRAs") Equifax and Trans Union failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, violating 15 U.S.C. § 1681e(b) and resulting in Equifax and Trans Union reporting inaccurate information about Plaintiff.

2.      Plaintiff's Complaint also alleges that Equifax and Trans Union violated 15 U.S.C. § 1681i by failing to reasonably reinvestigate Plaintiff's consumer dispute, which resulted in Equifax and Trans Union continuing to report inaccurate information about Plaintiff.

3.      Plaintiff's Complaint also alleges that Pearl Hawaii FCU, the furnisher of the inaccurate information, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Equifax or Trans Union.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. § 1331, 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5.      Venue in the District of Hawaii is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.  Plaintiff also resides within this District.

## PARTIES

6.      Plaintiff is a natural person residing in the City of Waipahu, Hawaii.

7.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.      Defendant Peal Hawaii FCU is a financial institution engaged in the business of extending consumer credit and collecting debt.  Pearl Hawaii FCU is located at 94-449 Ukee St, Waipahu, Hawaii 96797.  Pearl Hawaii FCU is also a "furnisher," as provided in 15 U.S.C. § 1681s-2.  Upon information and belief, Pearl Hawaii FCU is regularly engaged in the business of furnishing credit information to the credit reporting agencies. Pearl Hawaii FCU's principal place of business is located in Hawaii.

9.      Defendant Equifax is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f). Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309 and can be served thru its registered agent Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.  Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d)), to third parties in exchange for monetary compensation.  Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

10.     Defendant Trans Union is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f). Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661 and can be served through its registered agent Illinois Corporation Services Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.  Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d)), to third parties in exchange for monetary compensation. Trans Union's principal place of business is located at 555 West Adams Street,

Chicago, Illinois 60661.

11.    At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

12.    Defendants' violations were not made in the good faith conduct of their business, but were negligent, willful, in reckless disregard of the rights of Plaintiff, and/or intentional, because Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

13.    The United States Congress has found that the banking system is dependent upon fair and accurate consumer reporting.  Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair consumer reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15.    The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16.    Equifax and Trans Union, two of the three major consumer reporting agencies in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

17.    Equifax and Trans Union's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally

includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18.     Equifax and Trans Union obtain consumer information from various sources. Some consumer information, such as authorized user information, is sent directly to Equifax and Trans Union by furnishers.

19.     The vast majority of institutions that offer financial services (*e.g.*, banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax and Trans Union) to make lending decisions.

20.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and dates of delinquencies contained in CRAs' consumer reports.

21.     The information Equifax and Trans Union include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

22.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

23.     FICO Scores factor the following consumer report information:

Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a.    "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

    b.    The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

24.    Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

25.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

26.    A consumer's income, however, is not included in his or her consumer report; only his or her amount of debt is.

27.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for the consumer to obtain credit and favorable credit terms (*e.g.*, higher interest and lower credit limits).

28.    Certain FICO Scores are also calculated using information associated with authorized user accounts, even though authorized users of credit cards have

no obligation to pay down the associated balance.

29.    Equifax and Trans Union know that it is inaccurate to report that a consumer is individually liable for and/or delinquent on a balance for an account where the consumer is merely an authorized user on the account.

30.    A history reflecting delinquency or late payments on an authorized user account can negatively affect the authorized user's creditworthiness.

<u>*Allegations Specific to Credit Reporting of Plaintiff*</u>

31.    Prior to June 2020, Plaintiff became an authorized user of a credit card issued and serviced by Pearl Hawaii FCU, account number starting in 4465*** and opened in October 2016 (the "Pearl Account").

32.    Plaintiff's husband, Donald Piligrino, was the owner of the Pearl Account and responsible therefor.

33.    Plaintiff filed for Chapter 7 bankruptcy and received a discharge in the District of Hawaii Bankruptcy Court during 2020.

34.    During the first half of 2021, Plaintiff obtained a copy of her consumer reports from Equifax, Experian Information Solutions, LLC ("Experian"), and Trans Union, and learned that Equifax and Trans Union were reporting the Pearl Account on her credit reports.

35.    In the Pearl Account tradeline in both the Equifax and Trans Union reports, the account specifically was reported with a $1,403.00 balance which was charged off.

36.    The reporting of the Pearl Account on Plaintiff's consumer reports was erroneous because she was merely an authorized user on the account.

37.    Notably, Experian did not erroneously report the Pearl Account like Trans Union and Equifax did.  Experian (correctly) did not report the Pearl Account in Plaintiff's credit file at all.

*The Disputes*

38.    On or around April 27, 2021, Plaintiff mailed letters to Trans Union and Equifax disputing, *inter alia,* the inaccurate reporting of the Pearl Account.

39.    The dispute letters each stated, *inter alia*, that Plaintiff was not responsible for payments on the Pearl Account, and that Plaintiff was only an authorized user of the account.

40.    Equifax received the dispute letter, which Plaintiff sent by traceable U.S. mail.

41.    Upon information and belief, Equifax forwarded the dispute letter to Pearl Hawaii FCU within five days of receipt.

42.    Trans Union received the dispute letter, which Plaintiff sent by traceable U.S. mail.

43.    Upon information and belief, Trans Union forwarded the dispute letter to Pearl Hawaii FCU within five days of receipt

44.    In response to the April 2021 dispute, Trans Union: a) confirmed that the Pearl Account was not a proper account to report on Plaintiff's consumer report; and b) represented that it was correcting the error by deleting the account from her consumer report.  This response was conveyed to Plaintiff on or about May 11, 2021.

45.    For its part, Equifax inexplicably responded that it had verified that the disputed information was "accurate," even though it also acknowledged that Plaintiff was only an "authorized user" for the account. This response was conveyed to Plaintiff on or about June 1, 2021.

46.    When Plaintiff reviewed her Equifax consumer report dated November 10, 2022, the Pearl Account was still reporting as a $1,403.00 "charge off."

47.    When Plaintiff reviewed her Trans Union credit report dated November 10, 2022, Plaintiff learned that the Pearl Account had not been deleted from her credit file as Trans Union had represented, and was instead reporting as an account with a different reporting error; *i.e.*, that the account had been "included in [her 2020] bankruptcy."

48.    Upon information and belief, Equifax and Trans Union did not reinvestigate Plaintiff's dispute of the Pearl Account.

49.    Instead, pursuant to their unreasonable procedures, Equifax and Trans Union merely forwarded an automated dispute form to Pearl Hawaii FCU when Plaintiff disputed the Pearl Account.

50.    Rather than conducting the reinvestigation required by the FCRA, Equifax and/or Trans Union merely parroted whatever information Pearl Hawaii FCU furnished back.

51.    Equifax and Trans Union are aware that it is a violation of the FCRA to merely parrot the information supplied by the furnisher without conducting a reasonable reinvestigation.

52.    Upon information and belief, Trans Union and Equifax had actual knowledge that Plaintiff was merely an authorized user rather than an individual owner of the Pearl Account.

53.    The consumer reporting by Equifax and Trans Union made it appear that Plaintiff had encumbered all of the debt attributable to the Pearl Account.

54.    The consumer reporting by Equifax further made it appear that Plaintiff was still responsible for the debt in charge off status.

55.    The consumer reporting by Trans Union further made it appear that Plaintiff had avoided responsibility for the debt by having it discharged in her bankruptcy.

56.    Trans Union initially indicated that it was correcting the disputed

information after receiving a dispute letter from Plaintiff that was virtually identical to the dispute letter sent to Equifax.

57.    Trans Union's conduct is particularly egregious here because it acknowledged that the Pearl Account should be deleted from Plaintiff's credit file as a mere authorized user account, and falsely represented that it had in fact so deleted the account.

58.    Upon information and belief, Pearl Hawaii FCU likewise failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Equifax and Trans Union.

59.    Pearl Hawaii FCU received Plaintiff's dispute letter from Equifax and Trans Union and erroneously responded that the disputed information on Plaintiff's consumer report was correct.

60.    Alternatively, Pearl Hawaii FCU received Plaintiff's dispute letter from Equifax and Trans Union and erroneously responded that the account had been discharged in Plaintiff's bankruptcy.

61.    Pearl Hawaii FCU failed, among other things, to review (or intentionally ignored) all relevant information regarding the dispute.

62.    Pearl Hawaii FCU was in direct possession of information that indicated that the disputed information was inaccurate, but failed to locate this information or deliberately ignored this information.

63.    Upon information and belief, Pearl Hawaii FCU intentionally reported the Pearl Account to make it look like Plaintiff was responsible in order to extract money from her that it knew it was not entitled to extract.

64.    Consequently, Pearl Hawaii FCU continued to furnish inaccurate data to Equifax and Trans Union despite posessing: a) information from which Pearl Hawaii FCU could have reported the Pearl Account accurately; and/or b) actual knowledge of the falsity of the information Equifax and Trans Union was reporting.

65.    Defendants each know that an authorized user is not personally liable for the debt on an account and that it is misleading to report the authorized user as liable for derogatory debt after the consumer has disputed the reporting as inaccurate.

66.    Equifax and Trans Union had reason to know that the reporting was inaccurate the moment it started to report the Pearl Account as individually owned because they both knew that Plaintiff was merely an authorized user.

67.    Equifax inaccurately reported the Pearl Account in a way that would adversely affect Plaintiff's creditworthiness and credit scores due to the outstanding, delinquent balance and status of the account.

68.    Trans Union inaccurately reported the Pearl Account in a way that would adversely affect Plaintiff's creditworthiness and credit scores due to a discharge of the purportedly owed debt in bankruptcy.

69.    Equifax and Trans Union did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded automated dispute forms to Pearl Hawaii FCU when Plaintiff disputed the Pearl Account and parroted whatever information Pearl Hawaii FCU furnished back to them.

70.    Upon information and belief, Pearl Hawaii FCU failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Equifax and/or Trans Union.

71.    Pearl Hawaii FCU's failure to report accurate information is particularly egregious as it was notified of the inaccurate items of information through Plaintiff's disputes.

72.    Pearl Hawaii FCU also knows that an authorized user is not personally liable for the debt on that account and that it is misleading to report the authorized user as liable for derogatory debt after he or she has disputed the reporting as inaccurate.

73.    Equifax and Trans Union also know that an authorized user is not personally liable for the debt on that account and that it is misleading to report the authorized user as liable for derogatory debt after he or she has disputed the reporting as inaccurate.

74.    Defendants inaccurately reported the Pearl Account in a way that would adversely affect Plaintiff's creditworthiness and credit scores due to either the outstanding delinquent balance and status of the Pearl Account or its discharge in bankruptcy.

75.    Defendants' reporting of the Pearl Account on Plaintiff's consumer report was patently false and therefore inaccurate.

76.    If not patently false, Defendants' reporting of the Pearl Account on Plaintiff's consumer report was materially misleading and therefore inaccurate.

77.    Plaintiff specifically notified Defendants that she was only an authorized user of the Pearl Account and that the Pearl Account did not belong to her, but Defendants rejected this specific notice.

*Plaintiff's Injuries and Damages*

78.    Upon information and belief, had Equifax and Trans Union accurately maintained reasonable procedures to assure that the information it published about the Plaintiff was maximally accurate, Plaintiff would not have been deterred from applying for credit.

79.    Upon information and belief, had Defendants corrected or deleted information about the Pearl Account from Plaintiff's consumer reports when she disputed, Plaintiff's trended data, credit scores and/or DTI would have been better.

80.    Plaintiff has applied for credit and was approved on worse terms based on the presence of the inaccurate reporting of the Pearl Account debt.

81.    Defendants' inaccurate reporting of the Pearl Account, along with additional information belonging to Plaintiff, was published by Equifax and Trans

Union to third parties.

82.　　As a direct result of Defendants' inaccurate reporting, Plaintiff suffers economic injuries and resulting damages, including a decreased credit score, lower overall creditworthiness, and other financial and reputational harm.

83.　　Plaintiff specifically incurred a fee for the review of her credit reports and incurred postage charges when her dispute letters were mailed out to Trans Union and Equifax.

84.　　As a direct and proximate result of Defendants' conduct, Plaintiff was made to expend time finding documentation necessary to dispute the inaccurate Pearl Account reporting.

85.　　Additionally, Plaintiff suffers interference with daily activities, such as loss of sleep, headaches, changes in appetite, and emotional distress, including, without limitation, emotional and mental, anguish, reputational harm, humiliation, stress, anger, frustration, shock, embarrassment, violation of privacy, and anxiety.

## COUNT I
### Equifax and Trans Union
### Violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i

86.　　Based on the factual allegations in this complaint, Equifax and Trans Union have violated the FCRA in two important ways.

87.　　The FCRA requires CRAs, like Equifax and Trans Union, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

88.　　In this case, Equifax and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and consumer files they published and maintained concerning Plaintiff.

89.　　Equifax and Trans Union knew or should have known that the Pearl

Account did not belong to Plaintiff and was appearing inaccurately in Plaintiff's consumer reports.

90.    Equifax and Trans Union knew or should have known that Pearl Hawaii FCU had furnished inaccurate and unreliable information in the past.

91.    Upon information and belief, Equifax and Trans Union did not investigate the accuracy of the information they received about Plaintiff, or any other information provided by Pearl Hawaii FCU, prior to publishing that information in a consumer report.

92.    Upon information and belief, Equifax and Trans Union did not undertake any independent effort to determine whether Pearl Hawaii FCU complies with the FCRA.

93.    When Equifax and Trans Union reported the Pearl Account in Plaintiff's consumer report, it had an obligation to ensure they followed reasonable procedures to report the tradeline with maximal accuracy, including deleting the account when put on notice that the account did not belong to Plaintiff.

94.    These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Equifax and/or Trans Union from which they are on notice of their unreasonable procedures concerning the reporting of authorized user accounts.

95.    Equifax and Trans Union know that authorized user accounts should not be included on consumer reports with delinquent information.

96.    Yet Equifax and Trans Union inaccurately reported the Pearl Account in Plaintiff's consumer report.

97.    Equifax reported the Pearl Account with a charged off balance, despite knowing that Plaintiff was only an authorized user thereof.

98.    Trans Union reported the Pearl Account as having been discharged in

Plaintiff's bankruptcy, despite knowing that Plaintiff was only an authorized user thereof.

99.    Equifax and Trans Union violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's consumer file and consumer reports.

100.    Equifax and Trans Union also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Equifax and Trans Union knew or should have known the information they reported was inaccurate, or otherwise contradicted by information known by Equifax and Trans Union, reported to Equifax and Trans Union, or reasonably available to Equifax and Trans Union.

101.    Even after Plaintiff notified Equifax and Trans Union of the inaccurate information they included in Plaintiff's consumer files, Equifax and Trans Union continued to inaccurately report the Pearl Account.

102.    Equifax's and Trans Union's inaccurate reporting was particularly egregious because they had the ability to independently confirm that the Pearl Account should not have been included in Plaintiff's consumer file by reviewing their own records.

103.    Equifax and Trans Union further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher where, as here, Equifax and Trans Union independently possessed information confirming that the Pearl Account did not belong to Plaintiff and did not belong on Plaintiff's consumer reports, including the dispute letters from Plaintiff.

104.    Equifax and Trans Union's violations of 15 U.S.C. § 1681e(b) were willful because, upon information and belief, they have long been on notice that their procedures fail to adequately ensure maximal accuracy as to an Authorized User's status.

105.  Equifax and Trans Union have not changed their procedures despite knowing the danger their procedures pose to consumers.

106.  At a minimum, once Equifax and Trans Union were on notice of the unreliability of the information as a result of Plaintiff's disputes, they had no reason to rely on the continued reporting of the inaccurate Pearl Account by Pearl Hawaii FCU.

107.  Alternatively, Equifax and Trans Union's violations of 15 U.S.C. § 1681e(b) were negligent.

108.  When a consumer disputes the accuracy or completeness of information included in a CRA's consumer file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

109.  When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

110.  Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

111.  Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Equifax and Trans Union also violated the FCRA by failing to perform a reasonable reinvestigation of the Pearl Account even after Plaintiff notified them of the inaccurate information in Plaintiff's consumer files.

112.  Equifax and Trans Union's violations of 15 U.S.C. § 1681i include,

but are not limited to, the following:

> (a)  Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.
>
> (b)  Failing to consider all relevant information while investigating Plaintiff's dispute.
>
> (c)  Failing to include all relevant information when notifying Pearl Hawaii FCU of Plaintiff's dispute.
>
> (d)  Failing to report credit information consistent with the results of its reinvestigation.

113.  Equifax and Trans Union's inaccurate reporting damaged Plaintiff's creditworthiness.

114.  Plaintiff suffers actual damages as a result of the injuries proximately caused by Equifax and Trans Union's conduct, including the above-referenced economic damages, a decreased credit score, loss of credit opportunities, and other reputational and financial harm caused by the inaccurate reporting of an outstanding and delinquent balance in Plaintiff's consumer reports for a debt that did not belong to Plaintiff.

115.  Plaintiff also suffers interference with daily activities and emotional distress caused by other harm, including, but not limited to, loss of sleep, headaches, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

116.  Equifax and Trans Union are a direct and proximate cause of Plaintiff's injuries and resulting damages.

117.  Equifax and Trans Union are a substantial factor in Plaintiff's injuries and resulting damages.

118.  Equifax and Trans Union's acts, as described above, were done willfully and knowingly; or alternatively were committed negligently.

119.    Therefore, Equifax and Trans Union are individually liable for actual and statutory damages, punitive damages, attorneys' fees, and costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

### COUNT II
### Pearl Hawaii FCU
### Violations of the FCRA, 15 U.S.C. § 1681s-2(b)

120.    Based on the factual allegations of this Complaint, Plaintiff has stated a cause of action against Pearl Hawaii FCU for violations of the FCRA by failing to conduct a reasonable investigation of the Plaintiff's disputes.

121.    The FCRA requires furnishers of information like Pearl Hawaii FCU to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, it must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

122.    Pearl Hawaii FCU knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and evidenced by case law.

123.    Pearl Hawaii FCU obtained or had available substantial written materials that apprised it of its duties under the FCRA. Despite knowing these legal obligations, Pearl Hawaii FCU acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

124.    Plaintiff disputed the Pearl Hawaii FCU tradeline through Equifax and Trans Union.

125.    Thereafter, Equifax and Trans Union forwarded Plaintiff's disputes to Pearl Hawaii FCU, notifying Pearl Hawaii FCU that Plaintiff was disputing the

information it had furnished about the Pearl Account.

126.   Pearl Hawaii FCU received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures, despite possessing all relevant knowledge regarding the dispute.

127.   Pearl Hawaii FCU verified its inaccurate reporting in response to Plaintiff's dispute, despite possessing actual knowledge that the information Plaintiff disputed was inaccurate or being in possession of information from which Pearl Hawaii FCU could readily discern that the information Plaintiff disputed was inaccurate.

128.   Upon information and belief, Pearl Hawaii FCU continued to furnish inaccurate information about Plaintiff to Equifax and Trans Union, even though Pearl Hawaii FCU possessed all relevant information about the Pearl Account and the inaccuracy that Plaintiff disputed.

129.   The inaccurate Pearl Account materially and adversely affected Plaintiff's credit standing.

130.   On at least one occasion within the past two years, by example only and without limitations, Pearl Hawaii FCU violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes to Equifax and/or Trans Union.

131.   Pearl Hawaii FCU violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

      (a)   Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

      (b)   Willfully and negligently failing to review all relevant

information concerning Plaintiff's dispute;

(c)    Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)    Willfully and negligently failing to report to Equifax and/or Trans Union that the disputed information is indeed inaccurate;

(e)    Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f)    Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)    Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

132.    Pearl Hawaii FCU unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

133.    Pearl Hawaii FCU has long been on notice that it must conduct a searching inquiry when investigating a consumer's dispute, yet it chose to conduct only a meaningless, cursory investigation and verify the inaccurate Pearl Account.

134.    Plaintiff suffers actual damages as a result of the injuries proximately caused by Pearl Hawaii FCU's conduct, including the above-referenced economic damages, a decreased credit score, loss of credit opportunities, and other reputational and financial harm caused by the inaccurate reporting of an outstanding and delinquent balance in Plaintiff's consumer reports for a debt that

did not belong to Plaintiff.

135.    Plaintiff also suffers interference with daily activities and emotional distress caused by other harm, including, but not limited to, loss of sleep, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

136.    Pearl Hawaii FCU is a direct and proximate cause, as well as a substantial factor, in causing damage and harm to Plaintiff.

137.    Consequently, Pearl Hawaii FCU is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to her attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants for the following:

(a)    Declaratory judgment that Equifax and/or Trans Union violated the FCRA, 15 U.S.C. § 1681e(b) and § 1681i;

(b)    Declaratory judgment that Pearl Hawaii FCU violated the FCRA, 15 U.S.C. § 1681s-2(b);

(c)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(e)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(f)    An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) or § 1681o(a)(2); and

(g)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment

interest, and/or declaratory relief.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 30th day of January 2023,

> */s/Blake Goodman*
> Blake Goodman
> Bar Number: 7436
> 900 Fort Street Mall, #910
> Honolulu, HI 96813
> E: blake@debtfreehawaii.com
> T: (808) 528-4274
>
> *Attorneys for Plaintiff*
> *Eileen Ululani Piligrino*